Good morning. May it please the Court, Tahina Ickes here on behalf of Kirk Fisher, appellant in this case. Your Honors, this is a Second Amendment case. What specifically we're looking at here is whether 18 U.S.C. section 922 G9 and the Hawaii Revised Statute 134-7 can be constitutionally applied to Mr. Fisher. Now, just briefly, the facts, the background of that court have been decided by this circuit? I'm sorry, I didn't catch that. Hasn't the first part of your contention been answered by the Chauvin case? Well, let me address the Chauvin case, thank you. Yes, I think Chauvin did address, I think that Mr. Fisher's case is distinguishable. Now, Chauvin in that case, as I know the Court is well aware, Mr. Fisher had previously been convicted for domestic violence charges, and then at some point thereafter, there were allegations of re-abuse. Now, in any case, what I believe is the Chauvin court, even setting aside those additional facts that Mr. Chauvin had re-abused or allegedly re-offended, that Mr. Chauvin had not presented evidence to surmount that level of review of intermediate scrutiny. Now, I think in Mr. Fisher's case, that's different. The reason being, I know the Court in previous cases, Chauvin and Skoyen, excuse me for that pronunciation, has looked at past studies, and studies regarding domestic violence, re-abuse, and recidivism. So, no doubt the government has an important government interest to prevent gun violence, especially when it comes to accused domestic abusers, convicted domestic abusers, and enforcing those gun laws do substantially relate to that government interest. However, when we're looking at Mr. Fisher's case, we did submit a study that I think is different from some of the previous studies that were submitted under Chauvin and Skoyen. The reason being is that a lot of those studies were really limited in time. The study that we submitted as a supplemental exhibit, or supplemental record, citation rather, excuse me, is entitled Violence Against Women, a Longitudinal Study of Arrested Batterers. Now, it covers a 10-year period. In Mr. Fisher's case, he was arrested in 1996 and ultimately convicted for two accounts of petty misdemeanor battery. I have a question about his conviction. His conviction was under a statute of Hawaii, which prohibits striking, shoving, kicking, all sounds very violent to me, right? Or otherwise touching a person in an offensive manner. That doesn't sound very violent to me. Well, Your Honor, I... Are you abandoning the idea that this Hawaii statute was categorically overbroad as to whether it fell within domestic violence as used by 922G? Yes, Your Honor. That issue was heavily litigated in the district court. And in fact, Judge Kea at the district court level originally agreed with our argument that that slight touching, when we're looking at that, that does not meet essentially the standard of what a misdemeanor crime of domestic violence under Lautenberg addresses. My question is simple. Are you abandoning that claim on appeal? Your Honor, I think Castleman addresses that. And to be clear, the... Can I get a yes or no answer? That calls for a yes or no. No, Your Honor. We wouldn't... I wouldn't like to... Appellant wouldn't like to abandon that issue. However, it's not... Where in your brief is that issue raised? It's not, Your Honor. So I would have to... I would just have to leave it there. It's... I wouldn't like to abandon it, but it's true that it's not raised in the brief. We are focusing on whether the Lautenberg Amendment 922G9 and HRS 134-7 can be constitutionally applied to Mr. Fisher based on the facts of Mr. Fisher's case, as applied to Mr. Fisher and his facts. So as to the study over time, when we're talking about recidivism and violence against women with regards to re-abusers, convicted domestic abuse defendants, we're  I don't understand. I don't understand, pardon me, the purpose of what you're describing now. Well, it's... This sounds like information that might be given to a congressional committee to convince them to do something about the lifetime ban, which is encapsulated in the statute. But how is it our place to make a determination like that? Understood, Your Honor. I... What I'm looking at is the analysis and the opinion in Chauvin, which the court initially asked me about. And I know the Chauvin case takes it even a step further. So I'm at that middle step right now when it comes to whether or not Chauvin had presented evidence to overcome that intermediate scrutiny. In our case, I think we can, and that evidence is this study that I'm putting forth before the court. Now, the reason this particular study is different is because it covers a longer period of time when it discusses recidivism. Likewise, in Mr. Fisher's case, he hasn't done anything. He has picked up no new charges, has not been convicted since 1997, and we're in 2017. The Lautenberg Amendment allows an individual convicted of this type of misdemeanor crime to obtain relief in the courts of the state where they live, correct? Correct. And that is... And in some states, you can petition the court. In some states, you can ask to have your civil gubernatorial pardon, correct? Correct, Your Honor. Has your client ever done that? Well, the record is silent. That also calls for a yes or no. No, Your Honor. He has not applied for a pardon and, by extension, has never been granted or denied one. When it comes to the pardon, however, Your Honor is correct that 921A33B2 does allow for those restorative measures. In Hawaii, the gubernatorial pardon is the only route to go to get those Second Amendment rights. Are you arguing that that's constitutionally inadequate? Well, yes. And the reason being is... You'd like the court to say to Hawaii, what you're doing in terms of restoration of rights is not enough? We in the federal court system think you should do more? Well, I think the court... I mean, it's not uncommon for plaintiffs to sue regarding unconstitutional statutes or state law decisions in federal court. I think the recourse... I'm sorry for stumbling over these statements, but I think the recourse could be a declaration by the Also, we can... You answered the Dutch Hawkins question. Yeah, you have. You've answered it. Okay. With a lot of words. Excuse me. This is what you want us to do. Yes. Tell the Hawaii legislature what you've done in terms of restoration of rights is not enough. Yes. And the reason being is the gubernatorial pardon is part of the Hawaii Constitution. And the steps to achieve that... Oh, it's more than the legislature. You want us to tell... I'm sorry, Your Honor. I hope I didn't... You want us to tell everybody in Hawaii that they have to amend the state constitution. Excuse me, Your Honor. I'm... Maybe I missed both. In any case, if we're talking to the state legislature, and I don't have the statute to cite right now. It's in here. It's in the brief. Can the state legislature amend the constitution on its own? No. However, when we're talking about gubernatorial pardon application, the power rests solely with one person, and that's the governor. The applicant or a convicted defendant doesn't have the opportunity to prove... You're not insisting on an amendment to the constitution. You don't really care whether it's a law or a constitution. What you're saying is Hawaii somehow has to provide a mechanism for expunging these and restoring the right to bear arms, right? Correct. And that comes from where? I'm sorry, Your Honor. Where does that come from? Where does this obligation on the state come from? Well, the section under Lautenberg 921A-33B-2 does contemplate some restorative measures for getting these fundamental rights back. Now, in Mr. Fisher's case, he is a convicted misdemeanor. The statute just says if there are state measures to restore rights, we will respect them. We, the federal government, will accept them. There are many times we don't. There are many times when rights are taken away or somebody's committed a felony and they get an expungement or a sealing or something or other, and we don't, for purposes of our recidivism statutes and all sorts of stuff, we don't take into account state expungements or state restoration of rights. But in this case, federal law says, look, if you have it, we will accord it, we will respect it, and we will treat the person as having those rights restored for federal law purposes if they are restored by state law. But where does it say that state law has to do that? Well, I don't have anything other than that 921A-33B-2 that would contemplate restorative rights and leave that to the state. So if we conclude that that doesn't say it, what have you got left? At this point, Your Honor, just what's been briefed in our opening brief. Which is what, the Second Amendment by its own force? Yes, Your Honor. Okay. I'm way over the time. I haven't reserved any time. If the court has further questions for me, I could try and answer them. But with that, I'll just ask that the court reverse the ruling of the district court and remand the case. Thank you. Thank you. We'll hear from the other side. Good morning, Your Honors. And may it please the court, my name is Deputy Corporation Counsel Curtis Sherwood. I'm here on behalf of Pele City and County of Honolulu. Ms. Lisa Cataldo is also here representing the- Speak up, Mr. Sherwood. Thank you. Ms. Lisa Cataldo is here, also representing Chief Kealoha. But I'll be delivering the argument. The issue which the court confronts this morning is the federal method of regulating gun possession among convicted domestic abusers. And as the court has rightly pointed out, it incorporates state mechanisms of rehabilitation and necessarily varies from state to state. Hawaii's criminal justice system does not possess all possible means of rehabilitation as stated by the federal statute. But this- but Appellant's argument and the Appellant's argument makes it- On the Chauvin, that bears on the Second Amendment balance, right? Well, the majority did not consider it, or it didn't appear to consider it in finding the statute constitutional. Really? I thought it did. I thought it mentioned that and said one consideration is that, in fact, these rights can be restored in California. I think it mentioned- it may have mentioned it, Your Honor, but it was not part of the analysis. It certainly was part of Judge Bea's concurrence, but- Right, we know that. But I thought, in fact, the majority took it as part of the analysis. You disagree with that? I mean, you say they mentioned it, but they just sort of were saying it to- It wasn't central to their analysis in upholding it, Your Honor. And several circuits have also upheld the statute. The City contends the summary judgment was proper here because Mr. Fisher was properly prohibited from possessing firearms pursuant to the Lautenberg Amendment, and Hawaii law simply incorporates the The Lautenberg Amendment is constitutional because it does not touch upon the core of the Second Amendment right and because it meets appropriate test of intermediate scrutiny. I think the Court has rightfully pointed out that the Lautenberg Amendment itself does not contain any mandate that the state have these four rehabilitative measures. Do you have the Chauvin decision there? I do. I think Judge Kaczynski has a question. Can you turn to the passage where they talk about this? This is at page 1138. I'm there, Your Honor. You say, as explained above, the amendment exempts those with expunge, pardon, and set-aside convictions, or those who have had their civil rights stored. Therefore, while we recognize the amendment substantially burdens Second Amendment rights, the burden is lightened by these exceptions. Do you see that? I'm sorry, Your Honor. I'm on page 1138. Do you have the federal reporter page in front of you? I do. I don't know what version you're reading from. Do you have a fed third page in front of you? I have a... It's a right-hand column. You see a right-hand column. There's a very long paragraph starting at the top and ending close to the bottom. And the last word in the paragraph is exceptions. Do you see that word? I do now, Your Honor. Okay. So read the two sentences preceding the word exceptions. Just go ahead and read them out loud so we're all on the same page. But Chauvin goes too far when he argues that Section 922G9 is too broad because it contains no provision limiting its applicability. As explained above, Section 922G9 exempts those with expunged, pardoned, or set-aside convictions, or those who have had their civil rights restored. Therefore, while we recognize that Section 922G9 substantially burdens Second Amendment rights, the burden is lightened by these exceptions. Now, you said you think this is not part of the analysis. What do you think the word therefore is doing there? It's incorporating it, Your Honor. I stand corrected. Okay. So Chauvin says that that's part of the balance, and we're now on the same page. Why wouldn't we be required to consider... I mean, we can't just cite Chauvin in this case because it's a different balance. We have a different balance in Hawaii than in California because these... As I understand it, and this is looking at Judge Beyer's concurrence, but taking him as an expert on California law and procedure since he was a judge of the Superior Court for many years, he says it's practically automatic in California that if you meet certain requirements, there's no discretion involved. Assuming that's, in fact, the case, that is a materially different situation. Well, actually, Your Honor, I think, with all due respect, I think Judge Beyer's reliance on that particular procedure is not as forgiving as is depicted in the concurring opinion. I think we pointed out in our brief and some of the amicus briefs that although the civil rights are restored, including right to vote, right to hold public office, right to jury trial, the actual right to carry firearms is exempted from that forgiveness provision. So that's why we say it isn't forgiving. Hawaii is also unique. I'm not sure, and Judge Beyer may correct me if I'm wrong, about the deferred plea proceedings which occur in California. But one thing that we pointed out in our briefs, and I think I also pointed out in the amicus briefs, and one thing that is not touched upon by the Chauvin decision or the Heller decision, for that matter, is that we do have this deferred plea proceeding in which Mr. Fisher could have entered a deferred guilty plea or deferred no contest plea and having passed through a period of probation, a probationary period in which he did not violate the terms of that. Not only would it have been expunged, his conviction would have been expunged, it simply wouldn't have existed. So he would not have a crime of domestic violence for which to deal with some 20-odd years later. And evidently it was his choice or his attorney's choice not to petition for that. This is something that the prosecution can offer. No, he can move for it, Your Honor. If the prosecution doesn't agree with it, I believe he can move for it on his own. Or he can. Yeah, and it's up to the judge to decide whether to allow it or not. Are there any standards by which the governor does or does not grant relief? It's entirely discretionary, Your Honor. He can take a look at the defendant and say, you part your hair on the wrong side, so therefore I deny it? Well, it's at the governor's discretion. The parole authority does do an investigation. Speak up, please. I'm sorry, I have a cold, Your Honor. But the parole authority generally does an investigation for those individuals that apply for pardons. But it is entirely discretionary. We would take issue with the fact, with appellant's contention, that it's one individual. When you're talking about a lifetime ban, there are several governors over the course of a person's life that they can seek a pardon from. Petitioner or plaintiff appellant has had at least three governors since it was brought to his attention that he no longer has Second Amendment rights in which he could have applied for a pardon. Furthermore, I think the court's inquiry concerning the information, well, can I start over? Appellants brought to the court's attention a survey and they attached it as one of their supplemental authorities. I don't believe it finds as much favor to them as they would characterize it as. I would read from a synopsis of that study, the final paragraph of that synopsis saying, the research suggests that short-term cessation of domestic violence achieved after a variety of interventions may not indicate longer-term behavior change. I think the courts have recognized that, even though a domestic abuser may stop these types of crimes for a short period of time, there's always an increased risk, given that they have committed a domestic abuse crime in the past, that when things escalate, they will abuse in the future and simply having a gun in the home escalates that risk. Could Hawaii have, as a matter of statutory law, a provision that foreclosed the opportunity for somebody in Mr. Fisher's case to expunge that prior misdemeanor conviction? Could they say, that's our decision, this is a federal system and as a sovereign state, we have determined that we don't want to offer any form of relief to a person convicted of this kind of situation? Would they do that? Your Honor, I think the statute meets intermediate scrutiny and the vast majority of the courts have found that it meets intermediate scrutiny. Do you think a sovereign state such as Hawaii could foreclose any opportunity for a person convicted of a misdemeanor from obtaining relief from the lifetime sanction of the statute? I think they certainly could, but they would have to remove the pardon power from the governor. I think it was still... Oh, you think they could? Well, I think as the court rightly pointed out, it would take an amendment to the Constitution to remove that power from the governor. Well, could they do that? People could. Or provide an exception? The gubernatorial powers of gubernatorial pardon shall not apply to a person convicted of domestic violence? It would certainly make it a little less equitable, Your Honor, and it would be a harder test to meet. I think it would make it more akin to strict scrutiny under those circumstances. But courts have also found that the statute meets strict scrutiny including the U.S. v. Smith case. So, yes, it's possible. But even then... You've answered my question. Thank you. I'm sorry. And your time is up. Thank you. You've used up your time. You may take it, but otherwise we'll submit the case. Okay. Case for argument stands submitted.
judges: Kozinski, Hawkins, Bea